UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------  x

JOHN SMITH,[1]                                                        :
                                                                     :   Civ. Action No. _____
                                                                     :
                                     Plaintiff,                      :
                                                                     :   **COMPLAINT**
                     -against-                                       :
                                                                     :
DEPUTY SUPERINTENDENT EILEEN GONZALEZ-          :   **JURY TRIAL**
RUSSELL, DEPUTY SUPERINTENDENT FOR PREA         :   **DEMANDED**
ELAINE VELEZ, DOCTOR MICHELLE SMALL,            :
OFFENDER REHABILITATION COORDINATOR             :
LAURA SCHADE, PREA SERGEANT I. MEDINA,          :
SUPERVISING OFFENDER REHABILITATION             :
COORDINATOR JOY DEJESUS, AND                    :
SUPERINTENDENT AMY LAMANNA in their             :
individual capacities;                                               :
                                                                     :
                                     Defendants.                    :
                                                                     :

-----------------------------------------------------------------------  x

## PRELIMINARY STATEMENT

1.      In this civil rights suit brought under 42 U.S.C. § 1983 to vindicate his rights under

the United States Constitution, Mr. Smith challenges the invasive and traumatic assault he suffered

at the hands of Defendants when he was forced to undergo a genital examination, including

penetration, against his will.

2.      In January 2020, Mr. Smith, a transgender man, was incarcerated at Bedford Hills

Correctional Facility ("Bedford Hills"), a women's prison.  Upon arriving at Bedford Hills, Mr.

Smith was forced by Defendants, all employees of the New York State Department of Corrections

and Community Supervision ("DOCCS"), to submit to an invasive genital examination conducted

solely to determine his genital status, in blatant disregard of the Prison Rape Elimination Act, 34

---

[1] Plaintiff files this Complaint under a pseudonym to protect his identity for the reasons set forth in Plaintiff's Motion to Proceed Anonymously, filed upon commencement of this action.

U.S.C. § 30301 *et seq.* and its implementing regulations, 28 C.F.R. Part 115 (2012) ("PREA"), which specifically prohibit genital examinations undertaken for this purpose, and in violation of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

3.       Defendants had no legitimate reason for conducting this invasive genital examination.  Mr. Smith had already voluntarily submitted to (i) a strip search, which found no contraband, (ii) a routine physical examination, which included a visual examination of his genitals, and (iii) medical intake procedures, including blood and urine tests, which could be used to determine whether he had any contagious diseases that would threaten the well-being of other incarcerated people.

4.       Nevertheless, Superintendent LaManna required that Mr. Smith submit to an examination of his genitalia, which was solely for the purpose of determining his genital status. When he refused to consent, Defendants compelled him to submit by placing him in "Medical Lock," a form of solitary confinement, where he was required to stay alone in his cell for at least twenty-three (23) hours a day.  Defendants repeatedly informed Mr. Smith that he was in Medical Lock solely to coerce his consent to the genital examination.

5.       Mr. Smith was confined in deplorable conditions in Medical Lock.  After more than a week—including one day where he was taken to the medical unit in a wheelchair because of dizziness, fatigue, and nausea—he acquiesced to the examination because he was repeatedly told by Defendants that it was the only way he would be released from Medical Lock and he was assured that the examination would be solely visual.  Mr. Smith attempted to assert his rights under PREA, which identifies transgender people as a group at "risk of victimization" and creates standards to prevent the sexual assault and victimization of people held in custody.  However, when he asserted his right to be free from a genital examination, Defendant Doctor Small told him

that DOCCS can, and does, disregard these federal regulations without fear of repercussion. Notwithstanding that Mr. Smith told Defendant Doctor Small that he only agreed to a visual examination, Defendant Doctor Small touched Mr. Smith's genitals and penetrated them with a gynecological tool without Mr. Smith's consent.

6.      Mr. Smith has suffered tremendously because of this assault.  The examination triggered his post-traumatic stress disorder resulting from the repeated sexual abuse he experienced as a child, leading to, among other problems, difficulty sleeping, trouble eating, and significant weight loss.  It also exacerbated his gender dysphoria, causing increased anxiety, a distorted body image, and an aversion to physical touch which hinders his ability to develop intimate relationships.  Mr. Smith now increasingly isolates himself from friends and family, to the point where he placed a portable toilet next to his bed so that he did not need to leave his bedroom.  Mr. Smith also avoids being in public because he experiences hypervigilance for transphobia and, as a result, feels unsafe and in constant fear of discrimination and for his safety, which has worsened feelings of anxiety and depression.  Mr. Smith's anxiety and fear has also negatively affected his ability to secure employment and made him avoid seeking medical care when needed.

## JURISDICTION AND VENUE

7.      This action arises under 42 U.S.C. § 1983.

8.      Subject matter jurisdiction over federal constitutional issues is proper in this Court pursuant to 28 U.S.C. § 1331.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to this action occurred in the Southern District of New York.

## THE PARTIES

10.     During the periods relevant to this action, Plaintiff Mr. Smith was incarcerated at Bedford Hills, a prison under the operation and control of DOCCS.  Mr. Smith has since been released.

11.     Defendant Superintendent Amy LaManna ("Superintendent LaManna") was at all relevant times employed by DOCCS and was acting in a supervisory capacity over all other named defendants at Bedford Hills.   Superintendent LaManna is sued in her individual capacity because she ordered and coerced Mr. Smith to submit to the unlawful genital examination.

12.     Defendant   Deputy   Superintendent   Eileen   Gonzalez-Russell   ("Deputy Superintendent Gonzalez-Russell") was at all relevant times employed by DOCCS and was working as a deputy superintendent at Bedford Hills.  Deputy Superintendent Gonzalez-Russell is sued in her individual capacity because she coerced Mr. Smith to submit to the unlawful genital examination.

13.     Defendant PREA Deputy Superintendent Elaine Velez ("PREA Deputy Superintendent Velez") was at all relevant times employed by DOCCS and working as a deputy superintendent tasked with serving as the PREA compliance manager at Bedford Hills.  PREA Deputy Superintendent Velez is sued in her individual capacity because she coerced Mr. Smith to submit to the unlawful genital examination.

14.     Defendant Doctor Michelle Small ("Doctor Small") was at all relevant times employed by DOCCS and working at Bedford Hills as an obstetrics and gynecological specialist. Doctor Small is sued in her individual capacity because she personally conducted the unlawful genital examination of Mr. Smith and penetrated him with a gynecological tool without his consent.

4

15.     Defendant Offender Rehabilitation Coordinator Laura Schade ("ORC Schade") was at all relevant times employed by DOCCS and working as an offender rehabilitation coordinator at Bedford Hills.  ORC Schade is sued in her individual capacity because she coerced Mr. Smith to submit to the unlawful genital examination.

16.     Defendant PREA Sergeant I. Medina ("PREA Sergeant Medina") was at all relevant times employed by DOCCS and working as a sergeant tasked with enforcing and overseeing PREA compliance at Bedford Hills.  PREA Sergeant Medina is sued in her individual capacity because she coerced Mr. Smith to submit to the unlawful genital examination.

17.     Defendant Supervising Offender Rehabilitation Coordinator Joy DeJesus ("Supervising ORC DeJesus") was at all relevant times employed by DOCCS and working as a supervising rehabilitation coordinator at Bedford Hills.  Supervising ORC DeJesus is sued in her individual capacity because she coerced Mr. Smith to submit to the unlawful genital examination.

## FACTUAL ALLEGATIONS

18.     In 2012, Mr. Smith was diagnosed with gender dysphoria.

19.     Gender dysphoria is a serious medical condition where there is a marked difference, lasting at least six months, between an individual's expressed or experienced gender and the gender identity typically associated with the individual's sex assigned at birth.  This condition is associated with significant distress or impairment in social, occupational, or other important areas of functioning.

20.     "Sex assigned at birth" refers to the sex designation—usually made by a doctor or medical professional—on one's birth certificate.  For most people, one's internal sense of gender—or their "gender identity"—matches their assigned sex at birth; these people are

"cisgender." By contrast, a transgender person is an individual whose gender identity is different from their sex assigned at birth.  Mr. Smith was labeled female at birth, but he is a man.

21.     A well-established medical consensus finds that social and legal transition to living consistently with one's gender along with hormone therapy, surgery, and counseling can successfully alleviate gender dysphoria.

22.     Mr. Smith's freedom to express his male gender identity—through, among other things, wearing male clothing, using male pronouns, and being referred to by a masculine name— is essential to the treatment of his gender dysphoria.

23.     Since approximately 2012, Mr. Smith has lived publicly as a man and has taken additional steps to align his body with his gender identity.

24.     Since then, Mr. Smith has been receiving masculinizing hormone treatment, in the form of testosterone, which is a gender affirming therapy that has the effect of suppressing and minimizing feminine physical traits by, for example, stopping menstruation and developing male physical traits such as a deeper voice, facial and bodily hair growth, body fat redistribution, increased muscle mass, and clitoral enlargement.  He has also had gender affirming surgery, including a mastectomy in February 2019 and a hysterectomy and clitoral surgery by the end of 2019.

25.     The hormone treatment and gender reaffirming surgery have helped to improve Mr. Smith's quality of life by bringing his body into congruence with his gender identity.

**Intake at Rikers Island**

26.     Mr. Smith was arrested in August 2018, was convicted of the criminal sale of a controlled substance in the third degree in October 2019, and was thereafter sentenced to three and a half years in State prison.

27.     Following his conviction, Mr. Smith entered into the custody of the New York City Department of Correction ("DOC") at the Rose M. Singer Center on Rikers Island.

28.     Although DOC corrections officers tried to subject Mr. Smith to a genital examination, the doctor honored Mr. Smith's objection and refused to conduct the exam, referring to the prohibition on genital examinations for the sole purpose of determining genital status under PREA.

29.     Mr. Smith voluntarily underwent the standard medical tests provided during intake at DOC, including blood work and urine testing to rule out any communicable diseases.

### Intake at Bedford Hills Correctional Facility

30.     In contrast to Mr. Smith's treatment by DOC—upon arrival in State custody—DOCCS impermissibly and unlawfully forced Mr. Smith to submit to an invasive genital examination for the sole purpose of determining his genital status.

31.     On January 22, 2020, Mr. Smith was transferred from DOC to Bedford Hills.  In anticipation of the intake process, Mr. Smith informed the intake officer at Bedford Hills that he was transgender and that his "body was different."

32.     Mr. Smith repeatedly disclosed during intake that he had a hysterectomy, mastectomy, and clitoral surgery and that he was receiving hormone therapy.

33.     He also repeatedly disclosed a history of sexual abuse, post-traumatic stress disorder ("PTSD"), and depression.

34.     While the other individuals he arrived with were strip searched as a group for contraband, Mr. Smith was separated from the group so that he could be searched privately due to his transgender status.  During this time, Mr. Smith met with a nurse who asked him various questions about his body and surgeries, including whether they hurt and how the changes felt.

The nurse also took blood and urine samples which, among other things, confirmed that Mr. Smith was not pregnant.

35.     After having blood and urine samples taken, Mr. Smith went downstairs to a different room and was subjected to a strip frisk by a female officer.  DOCCS's directives define a strip frisk as "a search of an incarcerated individual's clothes and body, including a visual inspection of body cavities. For a male, this involves one or more of the following procedures: a mouth search [ ], running his hands through his hair, allowing his ears to be visually examined [ ], lifting his arms to expose his armpits, lifting his testicles to expose the area behind his testicles, and bending over and spreading his buttocks to expose his anus to the frisking Officer [ ]. For females, the procedures are similar except that females must also squat to expose the vagina."[2]

36.     Once Mr. Smith was completely naked, the officer instructed Mr. Smith to turn around, spread his legs, squat, and bend over.  Mr. Smith was also ordered to move his genitalia several different times.

37.     During this strip frisk, the searching officer repeatedly came very close and leaned in to view Mr. Smith's genitalia.

38.     The searching officer also repeatedly left the room.

39.     Upon information and belief, the officer was leaving the room to consult with PREA Sergeant Medina, who was outside the room.

40.     At no point during or after the search did officers indicate to Mr. Smith that they detected or discovered contraband hidden in or on his person.

41.     During the search, the officer informed Mr. Smith that she was going to speak with PREA Deputy Superintendent Velez about Mr. Smith's transgender status.

---

[2] New York State Department of Corrections and Community Supervision, *Control of & Search for Contraband Directive*, 7 (2021), https://doccs.ny.gov/system/files/documents/2021/12/4910_0.pdf.

42.     After the strip frisk, Mr. Smith spoke with PREA Sergeant Medina.   PREA Sergeant Medina asked Mr. Smith about his sexuality, gender identity, prior incarcerations, and safety concerns.  During this interview, Mr. Smith informed PREA Sergeant Medina that he was transgender and that he had been sexually abused as a child and later by a corrections officer.

43.     With respect to any risks posed by Mr. Smith to other incarcerated people, PREA Sergeant Medina acknowledged that Mr. Smith had no known history of committing institutional sexual abuse and had no known history of committing institutional violence.

44.     After completing his interview with PREA Sergeant Medina, Mr. Smith was then sent to the medical ward for a physical examination by a doctor who, as part of the examination, lifted Mr. Smith's waistband and viewed Mr. Smith's genitalia.  Mr. Smith then returned to the reception waiting room.

45.     Cisgender people arriving at Bedford Hills are not required to have their genitalia examined and are permitted to refuse ob/gyn examinations without repercussions.  The relevant policies provide that a gynecologic exam "will be performed, ***unless declined***"[3] and that "[e]very inmate has the right to refuse health care."[4]

**Invasive and Discriminatory Searches to Determine Genital Status**

46.     DOCCS policy prohibits physical examinations solely to determine genital status.

47.     Section IV(E)(1) of the DOCCS policy related to the "Control of & Search for Contraband" states, in relevant parts, as follows:

> A strip frisk of an inmate who has been diagnosed with Gender Dysphoria shall presumptively be conducted by staff of the same gender as the gender classification of the facility.  This presumption is subject to review by Central Office on a case-by-case basis

---

[3] New York State Department of Corrections and Community Supervision Division of Health Services: Women's Health Primary Care Practice Guidelines at pg. 2 (Apr. 10, 2018).
[4] New York State Department of Corrections and Community Supervision Division of Health Services Policy No. 7.18, Refusal of Health Care, Administrative Services (June 11, 2019).

following an incarcerated individual's transfer to a facility consistent with their gender identification or identification of other factors that may warrant a different determination. Staff shall apply procedures as appropriate based upon the anatomy of the inmate. **The facility (administration/security) shall not search or physically examine a transgender or intersex inmate for the sole purpose of determining the inmate's genital status.**

If the inmate's genital status is unknown, a medical provider may determine the inmate's genital status during conversations with the inmate, by reviewing medical records, or, if necessary, by learning the information as part of a broader medical examination conducted in private by a medical practitioner.

*See* New York State Corrections and Community Supervision, Control of & Search for Contraband, No. 4910 (June 28, 2019) (emphasis added).[5]

48.     Similarly, Policy 1.19, titled "Health Appraisal," states, with respect to the initial health appraisal at reception, in relevant part:

A facility shall not search or physically examine a transgender or intersex inmate for the sole purpose of determining the inmate's genital status. If the inmate's genital status is unknown, it may be determined during conversations with the inmate or by reviewing medical records. A medical practitioner may conduct a full physical examination of an inmate, including a transgender inmate, when relevant to the treatment of the patient. **Such an exam is to be conducted in private and with the patient's consent.** Findings are to be recorded in the Ambulatory Health Record.

*See* New York State Corrections and Community Supervision Division of Health Services POLICY, No. 1.19 (June 11, 2019) (emphasis added).[6]

49.     PREA provides that prisons "shall not search or physically examine a transgender or intersex inmate for the sole purpose of determining the inmate's genital status. If the inmate's genital status is unknown, it may be determined during conversations with the inmate, by

---

[5] This policy was in place at the time of Mr. Smith's incarceration. The current version of the directive contains the same language but replaces "inmate" with "incarcerated individual." As of the filing of this complaint, the current version of this directive is located at https://doccs.ny.gov/system/files/documents/2021/12/4910_0.pdf.
[6] This policy was in place at the time of Mr. Smith's incarceration. The current version of the directive contains substantially similar language.

reviewing medical records, or, if necessary, by learning that information as part of a broader medical examination conducted in private by a medical practitioner." 28 C.F.R. § 115.15(e).

50.     At all times relevant to this action, Defendants have been aware of PREA's requirements, were on notice regarding these standards, and were aware that transgender people are recognized by federal law as a specific group vulnerable to abuse in prison settings.

51.     At all times relevant to this action, Defendants were aware of Mr. Smith's transgender and genital status because he directly informed them of his prior surgeries and allowed multiple visual assessments of his genitalia, including through a standard strip frisk and a routine physical examination. Additionally, upon information and belief, medical records describing Mr. Smith's surgeries were readily available to Defendants had they asked to see them.

52.     Instead of complying with PREA, DOCCS took a contrary course with Mr. Smith.

53.     After waiting in reception for several minutes, Mr. Smith was brought back into the examination room.  The doctor was now accompanied by the nurse who Mr. Smith had met with earlier in the day.  The doctor and nurse told him that the Superintendent (i.e., Superintendent LaManna) required an additional examination of his genitalia to see what his genitals looked like. While the doctor examined Mr. Smith by looking inside his pants while he was laying down, the nurse attempted to pull down Mr. Smith's pants against Mr. Smith's wishes.

54.     Mr. Smith refused to submit to further examination and signed a document noting his refusal on the grounds of PTSD.

55.     The order requiring the examination, and the attempted examination, of Mr. Smith's genitalia were solely due to his status as a transgender man and was made in contravention of PREA and his constitutional rights.

## Solitary Confinement and Genital Examination

56.     After refusing to submit to the genital examination, Mr. Smith was placed in a solitary cell in the reception area, referred to as "Medical Lock."

57.     PREA Sergeant Medina told Mr. Smith that he was being medically locked because of his refusal to have a genital examination, per the Superintendent's orders.

58.     Medical Lock at Bedford Hills is similar to solitary confinement in that people are confined to their cells for twenty-three (23) hours per day and are isolated from other incarcerated people.

59.     Upon information and belief, Medical Lock is typically used to house people who have contagious illnesses.

60.     There was no medical reason to place Mr. Smith in Medical Lock.

61.     Mr. Smith was never told of any medical reason for being placed in Medical Lock.

62.     Upon information and belief, Mr. Smith's placement in Medical Lock was intended to coerce him to submit to a genital examination.

63.     As a consequence of Mr. Smith's refusal to submit to a genital examination, Mr. Smith spent eight (8) days in Medical Lock.

64.     While in Medical Lock, Mr. Smith was confined in deplorable conditions. The Medical Lock cell was poorly ventilated and extremely hot. Mr. Smith was required to eat all of his meals alone inside the cell and was only provided drinkable water during meal times. In one instance when Mr. Smith was lightheaded and dehydrated, he asked for water or ice outside of his meal time, but his requests were denied. Further, on three separate days, Mr. Smith was not permitted any recreational time although, per DOCCS policy, even in solitary confinement he should have been permitted at least one hour outside of his cell each day.

65.     Mr. Smith's hormone treatment was also temporarily decreased which, in conjunction with the poor conditions in Medical Lock, caused him to become overheated, sick, and weak.  Following several complaints, his hormone treatment was reinstated at its proper dosage.

66.     During his time in Medical Lock, Bedford Hills officers frequently misgendered Mr. Smith by addressing him with feminine pronouns despite his explicit requests to be addressed with masculine pronouns.

67.     When Mr. Smith and PREA Deputy Superintendent Velez spoke about Mr. Smith's confinement in Medical Lock, PREA Deputy Superintendent Velez told Mr. Smith that he had to submit to the genital examination if he wanted to get out of Medical Lock.

68.     Mr. Smith was also told by Supervising ORC DeJesus, Deputy Superintendent Gonzalez-Russell, and ORC Schade that he would only be released from Medical Lock if he allowed the doctor to examine his genitalia.

69.     Deputy Superintendent Gonzalez-Russell cursed at Mr. Smith and instructed him to comply with the genital examination.

70.     Supervising ORC DeJesus also threatened Mr. Smith that he would not be placed in general population and would instead be placed in a solitary confinement housing unit if he did not comply with the Superintendent's orders to have a genital examination.

71.     Supervising ORC DeJesus further threatened Mr. Smith that he would be unable to participate in the SHOCK Incarceration Program if he did not submit to the genital examination, which would result in his serving a substantially longer period of incarceration.

72.     On or around January 28, 2020, Mr. Smith was taken to the medical unit in a wheelchair because he felt weak and dizzy from the heat and dehydration he experienced while in Medical Lock.

73.     On January 29, 2020, at approximately 10:00 a.m., Mr. Smith met with W.L. Bates, Ph.D., Associate Psychologist.  During their meeting, Mr. Smith reported the above-described events to Dr. Bates.  Dr. Bates acknowledged that the genital examination was wrong, inappropriate, and uncalled for.

74.     That same day, Dr. Bates wrote a letter to Superintendent LaManna, Deputy Superintendent Carrington, PREA Deputy Superintendent Velez, Captain Artuz, and Lt. Cocozello, explaining that Mr. Smith had reported the following:

> On January 22, 2020 upon arrival at Bedford, during the intake screening, I was stripped[sic] searched and given a male and female examination to verify my sex. Immediately after the intake examination, I was taken to medical and was examined by a male doctor, who did a full body examination.  I was then sent to a little room and about 10 minutes later, I was brought back into the Dr.'s office, this time a nurse was present with the doctor.  They asked to see my genitals.  I refused.  They said the superintendent wants a full examination again of my genital area.  I said no and signed a refusal form indicating that I was uncomfortable with being examined for a third time. The medical staff have been talking to CO's about my case within my ear range.  Also, I have been on hormone medication weekly for the past six years, and they have lowered my hormone dosage to bi-weekly. That delay in dosage will cause me to be physically ill.

75.     On January 30, 2020, after eight (8) days in Medical Lock, Mr. Smith was taken to see Doctor Small, a female doctor, at approximately 8:50 a.m.

76.     Doctor Small asked Mr. Smith if he knew why he was there, and she proceeded to explain to Mr. Smith that the Superintendent wanted Mr. Smith's genitalia to be examined so that the prison could know more about his genitalia.

77.     Mr. Smith told Doctor Small that he suffered from PTSD, had refused prior genital examinations because he found them traumatizing, and that he had signed a non-consent form.

78.     Mr. Smith showed Doctor Small two documents relating to PREA that he received while working at the law library and at a Know Your Rights meeting when he was in DOC custody.  He explained that he thought the examination would violate PREA and asked Doctor Small what would happen if he refused the examination.

79.     Doctor Small explained that she did not know what would happen if he continued to refuse the examination, but questioned why Mr. Smith was continuing to refuse and subject himself to confinement in Medical Lock.

80.     Doctor Small also told Mr. Smith that Bedford Hills staff did not care about violating PREA because they would not get in trouble for failing to abide by PREA.

81.     Doctor Small then assured Mr. Smith that she only needed to perform a visual examination and gave Mr. Smith five (5) minutes to decide whether to proceed.

82.     At no time did Doctor Small indicate there was any medical purpose for the examination.

83.     Doctor Small also never told Mr. Smith that she was going to test Mr. Smith for sexually transmitted infections, nor did Mr. Smith ever consent to any such testing.

84.     If Doctor Small's intention was to test for STIs, that testing could have been conducted through urine and blood samples and not through a genital exam.

85.     Given the emotional and physical trauma that Mr. Smith had endured during his eight (8) days in Medical Lock, the fear he felt about going back to Medical Lock, the threats he had received that he would be placed in solitary confinement if he refused and the ramifications

that a refusal might have on his ability to participate in the SHOCK program, Mr. Smith acquiesced to a visual examination of his genitalia.

86.     During the examination, Mr. Smith was instructed to place his legs in stirrups with his pants and underwear removed.

87.      After beginning the examination with a visual inspection of Mr. Smith's genitalia, Doctor Small began conducting a physical examination of Mr. Smith's genitalia and placed her finger on Mr. Smith's genitalia.

88.     In response, Mr. Smith jumped off of the exam table and objected to having his genitalia touched.  After being assured once again that the examination would remain strictly visual, Mr. Smith sat back down on the exam table.

89.     Doctor Small then retrieved a long cotton swab.  Mr. Smith asked Doctor Small what she was going to do with the swab, and she said, "nothing."  Despite this assurance, Mr. Smith felt the long swab penetrate him.

90.     Mr. Smith jumped off the table and stopped the examination.

91.     Doctor Small reported in Mr. Smith's records that Mr. Smith "has had clitoral 'pumping', unsure if still has vagina – states [he] is getting graft from leg skin for scrotum."  Her notes further stated that Mr. Smith had a "normal vulvar area" and that it was "unclear if cervix is present."  In other words, Doctor Small's notes detail the status of Mr. Smith's genitalia, consistent with the reasons that the Superintendent had originally ordered the examination.

92.     The notes do not reflect that Mr. Smith consented to the touching or a penetrative examination, nor do the notes make reference to the prior signed non-consent form.

93.     Doctor Small's notes also do not provide a medical purpose for the examination.

94.     Mr. Smith was transferred out of Medical Lock shortly after the examination was complete.

95.     PREA Deputy Superintendent Velez told Mr. Smith he was being released from Medical Lock because he completed the genital examination that the Superintendent had ordered.

96.     As a result of the abuse that he endured at the hands of the Defendants, Mr. Smith suffers from psychological pain and mental anguish.  The assault triggered his PTSD resulting from the sexual abuse he experienced as a child, exacerbated his gender dysphoria, and caused severe emotional distress.  Mr. Smith now suffers from, among other problems, anxiety, a distorted body image, and an aversion to physical touch, all of which hinders his ability to function in a traditional work environment and develop intimate relationships.  Mr. Smith has developed difficulty sleeping, has trouble eating, and has lost a significant amount of weight as a result thereof.  Mr. Smith now increasingly isolates himself from friends and family, to the point where he had placed a portable toilet next to his bed so that he did not need to leave his bedroom.  Mr. Smith avoids being in public because he experiences hypervigilance for transphobia and as a result feels unsafe and in constant fear of discrimination and for his safety, which has worsened feelings of anxiety and depression.  Mr. Smith's anxiety and fear has also negatively affected his ability to secure employment and has made him fail to seek medical treatment when needed, due to his new discomfort and anxiety around medical professionals.

97.     On September 10, 2020, following his participation in the SHOCK Incarceration Program, Mr. Smith was released from prison.

## FIRST CAUSE OF ACTION

### FOURTH AMENDMENT VIOLATION (42 U.S.C. § 1983) – UNREASONABLE SEARCH
### (All Defendants)

98.     All Defendants acted under color of state law to deprive Mr. Smith of his clearly established right to be free from unreasonable searches, including penetrative and unjustified nonconsensual genital examinations, as guaranteed by the Fourth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

99.     All Defendants are liable for the unreasonable genital examination of Mr. Smith at Bedford Hills on January 30, 2020.

100.     Defendant Superintendent LaManna was personally involved in the violation of Mr. Smith's constitutional rights because she ordered that Bedford Hills staff conduct an unreasonable genital examination of Mr. Smith and that Mr. Smith be confined in Medical Lock to compel Mr. Smith's consent to an unconstitutional genital examination.

101.     Defendant Doctor Small was personally involved in the violation of Mr. Smith's constitutional rights because she conducted the unreasonable genital examination of Mr. Smith on January 30, 2020.

102.     Defendants PREA Sergeant Medina, Deputy Superintendent Gonzalez-Russell, PREA Deputy Superintendent Velez, Supervising ORC DeJesus, and ORC Schade were each personally involved in the violation of Mr. Smith's constitutional rights by acting to coerce consent to or otherwise knowingly failing to prevent Mr. Smith's unnecessary and unwanted genital examination and placement of Mr. Smith in Medical Lock to compel his consent.

103.      The examination was of a sensitive and private body part in which Mr. Smith has a significantly heightened privacy interest.

104.     There was no legitimate reason—medical or penological—for requiring the genital examination that occurred on January 30, 2020.

105.     As a direct and proximate result of the Defendants' unlawful conduct as alleged herein, Mr. Smith was severely harmed and suffered damages in an amount to be determined, plus attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### EIGHTH AMENDMENT VIOLATION (42 U.S.C. § 1983) – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL CONDITIONS
### (All Defendants)

106.     All Defendants acted under color of state law to deprive Mr. Smith of his clearly established right to be free from cruel and unusual punishment, including inhumane conditions of confinement, as guaranteed by the Eighth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

107.     Defendant Superintendent LaManna acted with deliberate indifference to Mr. Smith's health and safety, and in particular to the serious risk that nonconsensual touching and penetration of Mr. Smith's genitalia would cause pain and suffering to Mr. Smith, an individual with gender dysphoria and who suffers from PTSD and depression as a result of past sexual abuse, by ordering and coercing Mr. Smith's submission to the unnecessary and nonconsensual genital examination that occurred on January 30, 2020.

108.     Defendant Doctor Small acted with deliberate indifference to Mr. Smith's health and safety, and in particular to the serious risk that nonconsensual touching and penetration of Mr. Smith's genitalia would cause pain and suffering to Mr. Smith, an individual with gender dysphoria and who suffers from PTSD and depression as a result of past sexual abuse, by conducting an unnecessary and nonconsensual genital examination on January 30, 2020.

109.     Defendants PREA Sergeant Medina, Deputy Superintendent Gonzalez-Russell, PREA Deputy Superintendent Velez, Supervising ORC DeJesus, and ORC Schade acted with deliberate indifference to Mr. Smith's health and safety, and in particular to the serious risk that nonconsensual touching and penetration of Mr. Smith's genitalia would cause pain and suffering to Mr. Smith, an individual with gender dysphoria and who suffers from PTSD and depression as a result of past sexual abuse, by coercing submission or otherwise failing to prevent the unnecessary and nonconsensual genital examination and placement of Mr. Smith in Medical Lock to compel his consent to the January 30, 2020 genital examination.

110.     There was no legitimate penological justification or medical necessity to conduct an examination of Mr. Smith to determine his genital status without his express and informed consent.

111.     A genital examination for the purpose of determining genital status, in contravention of PREA, is incompatible with evolving standards of decency.

112.     The Defendants had knowledge of Mr. Smith's gender dysphoria, PTSD, depression, and history of sexual abuse at all relevant times.

113.     As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Mr. Smith was severely harmed and suffered damages in an amount to be determined, plus attorneys' fees and costs.

### THIRD CAUSE OF ACTION

**EIGHTH AMENDMENT VIOLATION (42 U.S.C. § 1983) –
SEXUAL ASSAULT
(Doctor Small)**

114.     Defendant Doctor Small acted under color of state law to deprive Mr. Smith of his clearly established right to be free from cruel and unusual punishment, including sexual assault,

as guaranteed by the Eighth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

115.     Doctor Small acted willfully and wantonly for the purpose of humiliating Mr. Smith by conducting a sexually invasive and penetrative examination of Mr. Smith's genitalia in contravention of Mr. Smith's express lack of consent on January 30, 2020, in violation of his right to be free from cruel and unusual punishment.

116.     The conduct of Doctor Small was entirely gratuitous, was not medically necessary, was devoid of penological purpose, and was incompatible with evolving standards of decency.

117.     A genital examination for the purpose of determining genital status, in contravention of PREA, is incompatible with evolving standards of decency.

118.     As a direct and proximate result of Defendant Doctor Small's unlawful conduct as alleged herein, Mr. Smith was severely harmed and suffered damages in an amount to be determined, plus attorneys' fees and costs.

### FOURTH CAUSE OF ACTION

**EIGHTH AMENDMENT VIOLATION (42 U.S.C. § 1983) – DELIBERATE INDIFFERENCE TO THE RISK OF SEXUAL ASSAULT**
**(Defendants Superintendent LaManna, PREA Sergeant Medina, Deputy Superintendent Gonzalez-Russell, PREA Deputy Superintendent Velez, Supervising ORC DeJesus, and ORC Schade)**

119.     Defendants Superintendent LaManna, PREA Sergeant Medina, Deputy Superintendent Gonzalez-Russell, PREA Deputy Superintendent Velez, Supervising ORC DeJesus, and ORC Schade acted under color of state law to deprive Mr. Smith of his clearly established right to be free from cruel and unusual punishment, including sexual assault, as guaranteed by the Eighth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

120.    Defendant Superintendent LaManna acted with deliberate indifference to Mr.
Smith's safety by ordering that Bedford Hills staff conduct a physical and penetrative examination
of Mr. Smith's genitalia for which he had refused consent and for which there was no legitimate
penological purpose.

121.    Defendants PREA Sergeant Medina, Deputy Superintendent Gonzalez-Russell,
PREA Deputy Superintendent Velez, Supervising ORC DeJesus, and ORC Schade acted with
deliberate indifference to Mr. Smith's safety by enforcing Superintendent LaManna's demand
that Mr. Smith submit to an unwanted genital examination, acting to coerce his acquiescence
thereto, and failing to take any action to prevent the nonconsensual touching and penetration of
Mr. Smith's genitalia, and in particular to the serious risk that such nonconsensual touching and
penetration of Mr. Smith's genitalia would cause him pain and suffering.

122.    A genital examination for the purpose of determining genital status, in
contravention of PREA, is incompatible with evolving standards of decency.

123.    As a direct and proximate result of Defendant Superintendent LaManna, PREA
Sergeant Medina, Deputy Superintendent Gonzalez-Russell, PREA Deputy Superintendent
Velez, Supervising ORC DeJesus, and ORC Schade's unlawful conduct as alleged herein, Mr.
Smith was severely harmed and suffered damages in an amount to be determined at trial, plus
attorneys' fees and costs.

## FIFTH CAUSE OF ACTION

### EIGHTH AMENDMENT VIOLATION (42 U.S.C. § 1983) – EXCESSIVE USE OF FORCE
### (Doctor Small)

124.    Defendant Doctor Small acted under color of state law to deprive Mr. Smith of his
clearly established right to be free from cruel and unusual punishment, including the right to be

free from unreasonable and unjustified force against his person, as guaranteed by the Eighth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

125.    Defendant Doctor Small maliciously and sadistically used excessive force to cause harm to Mr. Smith by conducting the assault on Mr. Smith during the January 30, 2020 genital examination of Mr. Smith, for which there was no legitimate penological purpose.

126.    Defendant Doctor Small thus violated contemporary standards of decency by using force to inflict wanton and unnecessary pain on Mr. Smith.

127.    As a direct and proximate result of Defendant Doctor Small's unlawful conduct as alleged herein, Mr. Smith was severely harmed and suffered damages in an amount to be determined at trial, plus attorneys' fees and costs.

### SIXTH CAUSE OF ACTION

**EIGHTH AMENDMENT VIOLATION (42 U.S.C. § 1983) – DELIBERATE INDIFFERENCE TO EXCESSIVE USE OF FORCE**
**(Defendants Superintendent LaManna, PREA Sergeant Medina, Deputy Superintendent Gonzalez-Russell, PREA Deputy Superintendent Velez, Supervising ORC DeJesus, and ORC Schade)**

128.    Defendants Superintendent LaManna, PREA Sergeant Medina, Deputy Superintendent Gonzalez-Russell, PREA Deputy Superintendent Velez, Supervising ORC DeJesus, and ORC Schade acted under color of state law to deprive Mr. Smith of his clearly established right to be free from cruel and unusual punishment, including the right to be free from unreasonable and unjustified force against his person, as guaranteed by the Eighth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

129.    Defendant Superintendent LaManna acted with deliberate indifference by personally ordering Doctor Small to conduct the January 30, 2020 genital examination of Mr. Smith at Bedford, which Superintendent LaManna knew would subject Mr. Smith to an assault on his person, for which there was no legitimate penological purpose.

130.    Defendants PREA Sergeant Medina, Deputy Superintendent Gonzalez-Russell, PREA Deputy Superintendent Velez, Supervising ORC DeJesus, and ORC Schade acted with deliberate indifference by coercing and compelling Mr. Smith's submission to the January 30, 2020 genital examination at Bedford, which they knew would subject Mr. Smith to an assault on his person, for which there was no legitimate penological purpose.

131.    As a direct and proximate result of Defendant Superintendent LaManna, PREA Sergeant Medina, Deputy Superintendent Gonzalez-Russell, PREA Deputy Superintendent Velez, Supervising ORC DeJesus, and ORC Schade's unlawful conduct as alleged herein, Mr. Smith was severely harmed and suffered damages in an amount to be determined at trial, plus attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION

**FOURTEENTH AMENDMENT VIOLATION (42 U.S.C. § 1983) – THE DEPRIVATION OF EQUAL PROTECTION UNDER THE LAW**
**(All Defendants)**

132.    All Defendants acted under color of state law to intentionally deprive Mr. Smith of his clearly established right to equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

133.    All Defendants deprived Mr. Smith of his constitutional right to be free from discrimination on the basis of his gender identity and thus on the basis of sex in violation of the Fourteenth Amendment.

134.    Defendant Superintendent LaManna intentionally discriminated against Mr. Smith by ordering Bedford Hills staff to conduct an unnecessary and unwanted genital examination of Mr. Smith, which occurred on January 30, 2020, for the purpose of determining his genital status, because of his sex and transgender status.

135.    Defendants PREA Sergeant Medina, Deputy Superintendent Gonzalez-Russell, PREA Deputy Superintendent Velez, Supervising ORC DeJesus, and ORC Schade intentionally discriminated against Mr. Smith through their personal involvement in the violation of Mr. Smith's constitutional rights by coercing Mr. Smith to submit to an unnecessary and unwanted genital examination, which occurred on January 30, 2020, for the purpose of determining his genital status, because of his sex and transgender status.

136.    Defendant Doctor Small intentionally discriminated against Mr. Smith by conducting an unnecessary and unwanted genital examination of Mr. Smith on January 30, 2020, for the purpose of determining his genital status, because of his sex and transgender status.

137.    Mandatory genital examinations are not imposed on incarcerated cisgender people.

138.    There is no legitimate penological purpose for requiring transgender inmates to submit to a genital examination.

139.    Genital examinations conducted to determine genital status are not substantially related to an important state interest, as shown by the fact that PREA forbids them.

140.    As a direct and proximate result of the unlawful conduct of all Defendants as alleged herein, Mr. Smith was severely harmed and suffered damages in an amount to be determined at trial, plus attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION

### FOURTEENTH AMENDMENT VIOLATION (42 U.S.C. § 1983) – THE RIGHT TO REFUSE UNWANTED AND UNNECESSARY MEDICAL PROCEDURES AND THE RIGHT TO PROVIDE INFORMED CONSENT
### (All Defendants - As Pled in the Alternative)

141.    All Defendants acted under color of state law to deprive Mr. Smith of his clearly established due process right to be free from unlawful intrusions into his body, including his right

to be free from unnecessary and unwanted medical examinations, as guaranteed under the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

142.    Defendant Superintendent LaManna ordered Bedford Hills staff to conduct a genital examination of Mr. Smith for the sole purpose of determining his genital status despite Mr. Smith's explicit refusal of consent.

143.    Defendant Doctor Small acted knowingly and deliberately in conducting a genital examination on January 30, 2020 which exceeded the scope of Mr. Smith's consent.

144.    Defendants PREA Sergeant Medina, Deputy Superintendent Gonzalez-Russell, PREA Deputy Superintendent Velez, Supervising ORC DeJesus, and ORC Schade were each personally involved in the violation of Mr. Smith's constitutional rights by coercing Mr. Smith to submit to an unnecessary and unwanted genital examination.

145.    Mr. Smith's due process rights include the right to refuse unwanted and unnecessary medical examinations and the right to information sufficient to exercise an intelligent choice regarding the scope of the genital examination to which Mr. Smith was being coerced to consent.

146.    Mr. Smith was clear that he did not want a genital examination and signed an exam refusal form indicating his lack of consent to a genital examination.

147.    There was no legitimate reason—medical or penological—for subjecting Mr. Smith to an invasive genital examination against his express consent.

148.    Mr. Smith's right to refuse unwanted medical treatment and testing was violated.

149.    As a direct and proximate result of the unlawful conduct of all Defendants as alleged herein, Mr. Smith was severely harmed and suffered damages in an amount to be determined at trial, plus attorneys' fees and costs.

## <u>CONCLUSION</u>

WHEREFORE, Plaintiff demands judgment against the Defendants on each of the claims as follows:

a.      That the jury find and the Court adjudge and decree that Plaintiff shall recover compensatory and punitive damages in an amount to be determined at trial.

b.       Declaratory relief that Defendants deprived Plaintiff of his rights under the United States Constitution.

c.      That Plaintiff recover the costs of the suit herein, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

d.      That the Court grant Plaintiff such other and further relief as the Court shall deem just and proper.

[Remainder of page intentionally left blank]

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues and counts in the Complaint herein.

Dated:    August 29, 2022
          New York, New York

PAUL HASTINGS LLP

By:    /s/ Daniel A. Fliman
       Daniel A. Fliman
       Emily L. Kuznick
       200 Park Avenue
       New York, NY 10166
       Telephone: (212) 318-6000
       danfliman@paulhastings.com
       emilykuznick@paulhastings.com

THE LEGAL AID SOCIETY

By:    /s/ Erin Harrist

       Erin Beth Harrist
       Dori Lewis
       Sophia Gebreselassie
       199 Water Street, 6th Floor
       New York, NY 10038
       Telephone: (212) 577-3300
       Eharrist@legal-aid.org
       Dlewis@legal-aid.org
       Sgebreselassie@legal-aid.org

       *Attorneys for Plaintiff Mr. Smith*