**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x

JOHN SMITH,                                                        :
                                                                  :
                        Plaintiff,                                     :
                                                                  :
      -against-                                             :
                                                                  :
DEPUTY SUPERINTENDENT EILEEN GONZALEZ-            :
RUSSELL, DEPUTY SUPERINTENDENT FOR PREA          :
ELAINE VELEZ, DOCTOR MICHELLE SMALL,             :
OFFENDER REHABILITATION COORDINATOR              :   Civ. Action No. _____
LAURA SCHADE, PREA SERGEANT I. MEDINA,           :
SUPERVISING OFFENDER REHABILITATION              :
COORDINATOR JOY DEJESUS, AND                     :
SUPERINTENDENT AMY LAMANNA in their              :
individual capacities;                           :
                                                                  :
                    Defendants.                                   :

-------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>PLAINTIFF'S MOTION TO PROCEED ANONYMOUSLY</u>

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................................1

II.   BACKGROUND ............................................................................................2

III.  ARGUMENT .................................................................................................3

   A.    This Case, Which Involves an Invasive and Traumatic Assault on Mr. Smith Because He is Transgender, Reveals Sensitive and Highly Personal Information that Poses a Serious Risk of Physical and Mental Harm to Mr. Smith if Disclosed (*Sealed Plaintiff* Factors One and Two) ....................................................................................................................4

   B.    Mr. Smith's Interest in Proceeding Anonymously is Particularly Strong Because He is Challenging a Government Activity of Interest to the Broader Community (*Sealed Plaintiff* Factor Five) ...............................................................................................................8

   C.    Defendants Are Not Prejudiced By Allowing Mr. Smith to Proceed Anonymously (*Sealed Plaintiff* Factor Six) ...............................................................................................9

   D.    Mr. Smith's Identity Has Thus Far Been Kept Confidential (*Sealed Plaintiff* Factor Seven) ...............................................................................................................10

   E.    The Public Interest is Best Served by Permitting Plaintiff to Proceed Anonymously in this Case Concerning the Treatment of Incarcerated Transgender People (*Sealed Plaintiff* Factors Eight and Ten)..................................................................................................10

IV.   CONCLUSION............................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. City of New York*,
143 F. Supp. 3d 134 (S.D.N.Y. 2015) ................................................................. 6

*Arroyo Gonzalez v. Rossello Nevares*,
305 F. Supp. 3d 327 (D.P.R. 2018) ...................................................................... 4

*Del. Valley Aesthetics, PLLC v. Doe 1*,
2021 WL 2681286 (E.D. Pa. June 30, 2021) ....................................................... 7

*Doe No. 2 v. Kolko*,
242 F.R.D. 193 (E.D.N.Y. 2006) ........................................................... 5, 8, 9, 11

*Doe v. Blue Cross & Blue Shield*,
794 F. Supp. 72 (D.R.I. 1992) ............................................................................. 7

*Doe v. Cabrera*,
307 F.R.D. 1 (D.D.C. 2014) ................................................................................. 5

*Doe v. City of Detroit*,
2018 WL 3434345 (E.D. Mich. July 17, 2018) ................................................... 7

*Doe v. Corrections Corp. of Am.*,
Case No. 3:15-cv-00068 (Docket Entry No. 11) (M.D. Tenn. Jan. 22, 2015) ..................... 5

*Doe v. De Amigos, LLC*,
2012 WL 13047579 (D.D.C. Apr. 30, 2012) ....................................................... 5

*Doe v. Evans*,
202 F.R.D. 173 (E.D. Pa. 2001) ........................................................................ 11

*Doe v. Frank*,
951 F.2d 320 (11th Cir. 1992) ............................................................................. 7

*Doe v. Genesis Healthcare*,
535 F. Supp. 3d 335 (E.D. Pa. Apr. 23, 2021) .............................................. 7, 10

*Doe v. McConn*,
489 F. Supp. 76 (S.D. Tex. 1980) ....................................................................... 7

*Doe v. Pa. Dep't of Corr.*,
2019 WL 5683437 (M.D. Pa. Nov. 1, 2019) ............................................. 7, 10, 11

*Doe v. Pa. Dep't of Corr.*,
  2022 WL 446370 (W.D. Pa. Feb. 14, 2022) ........................................................ 7

*Doe v. Paychex, Inc.*,
  2020 WL 219377 (D. Conn. Jan. 15, 2020) ........................................................ 5

*Doe v. Pence*,
  2016 WL 11578507 (S.D. Ind. Nov. 22, 2016) ............................................. 7, 8

*Doe v. Penzato*,
  2011 WL 1833007 (N.D. Cal. May 13, 2011) .................................................... 9

*Doe v. Smith*,
  105 F. Supp. 2d 40 (E.D.N.Y. 1999) ................................................................ 8

*Doe v. Triangle Doughnuts, LLC*,
  2020 WL 3425150 (E.D. Pa. June 23, 2020) ........................................... 7, 10, 11

*Doe v. United States Life Ins. Co.*,
  123 F.R.D. 437 (S.D.N.Y. 1988) ...................................................................... 4

*In re E.P.L.*,
  891 N.Y.S.2d 619 (N.Y. Sup. Ct. 2009) .......................................................... 6

*E.W. v. New York Blood Center*,
  213 F.R.D. 108............................................................................................... 8, 9

*Foster v. Anderson*,
  2019 WL 329548 (D. Kans. Jan. 25, 2019) ...................................................... 7

*Grimm v. Gloucester Cty. Sch. Bd.*,
  972 F.3d 586 (4th Cir. 2020) ........................................................................... 6

*Hersom v. Crouch*,
  2022 WL 908503 (S.D. W.Va. Mar. 28, 2022) .............................................. 1, 7

*James v. Jacobson*,
  6 F.3d 233 (4th Cir. 1993) ............................................................................... 5

*K.L. v. State, Dep't of Admin., Div. of Motor Vehicles*,
  2012 WL 2685183 (Alaska Mar. 12, 2012)....................................................... 7

*Karnofski v. Trump*,
  2017 WL 11431253 (W.D. Wash. Oct. 10, 2017).............................................. 7

*Powell v. Schriver*,
  175 F.3d 107 (2d Cir. 1999) .......................................................................... 1, 4

*Rapp v. Fowler*,
    537 F. Supp. 3d 521 (S.D.N.Y. 2021) ...................................................................... 5

*Roe v. Aware Woman Ctr. For Choice, Inc.*,
    253 F.3d 678 (11th Cir. 2001) ................................................................................... 9

*Sealed Plaintiff v. Sealed Defendant*,
    537 F.3d 185 (2d Cir. 2008) ...........................................................................*passim*

*Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
    858 F.3d 1034 (7th Cir. 2017) ................................................................................... 6

**Statutes**

Prison Rape Elimination Act ............................................................................................ 2, 8

**Other Authorities**

28 C.F.R.
    § 115.15(e) ................................................................................................................ 2, 8
    § 115.41(d)(7) ................................................................................................................ 8

Emily Waters et al., *A Crisis of Hate: A Report on Lesbian, Gay, Bisexual, Transgender, and
    Queer Hate Violence Homicides in 2017* (Nat'l Coalition of Anti-Violence Programs
    2018) (noting an 86% increase in homicides of LGBTQ people since 2016) ...................... 6

Fed. R. Civ. P. 10(a) ........................................................................................................ 3

Human Rights Campaign, *Dismantling a Culture of Violence: Understanding Violence
    Against Transgender and Non-Binary People and Ending the Crisis* (updated Oct. 2021)
    (noting there are at least 256 cases of fatal violence against transgender and gender non-
    conforming people since 2013) ........................................................................................ 6

Sandy James, et. al., *The Report of the 2015 U.S. Transgender Survey*, 198 (National Center
    for Transgender Equality 2016) ........................................................................................ 6

U.S. Const.
    Fourth Amendment .................................................................................................... 3
    Eighth Amendment .................................................................................................... 3
    Fourteenth Amendment ............................................................................................. 3

## I.   INTRODUCTION

Plaintiff John Smith is a transgender man challenging the constitutionality of an invasive search and assault on the most private area of his body.  He seeks to proceed anonymously because disclosure of his identity—specifically his transgender status—exposes him to a serious risk of harm and because this case involves intensely private matters including a compelled genital examination and his history of childhood sexual abuse.

As a transgender man, Mr. Smith has a strong interest in anonymity rooted in the significant violence and social stigma aimed at transgender people.  One's transgender status is highly personal, private information that reveals sensitive medical information.  As the Second Circuit has explained, "[t]he excruciatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter, is really beyond debate."  *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999); *see also Hersom v. Crouch*, 2022 WL 908503, at *2 (S.D. W.Va. Mar. 28, 2022) ("[A] person's transgender status is a highly sensitive and personal matter.").  That is particularly so in this case, where Mr. Smith was compelled to undergo an invasive examination of his genitalia and in which he discloses detailed information about his gender-affirming surgeries.  The balance also weighs in favor of anonymity because Plaintiff is a survivor of sexual abuse as a child, which exacerbates the harm he experienced during the assault at issue in this litigation.

Any prejudice to the Defendants is mitigated by Plaintiff's agreement to provide his name to Defendants and this Court pursuant to an order barring further dissemination of his name or other identifying information and requiring that any public filings redact his name and identifying information.  The public will be permitted to follow this case because the filings will be public, with only Plaintiff's identifying information concealed.

## II.     BACKGROUND

This action arises from the invasive and traumatic assault Plaintiff John Smith suffered at the hands of Defendants when he was forced to undergo a genital examination—including penetration—against his will while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").

Mr. Smith is a transgender man; he was assigned female at birth, but he is a man and has lived as a man since 2012.  (Compl. ¶¶ 22-24.)  Upon entering state custody, Mr. Smith submitted to a strip frisk and medical examination where his genitals were viewed, he supplied urine and blood samples for testing, provided information about his gender-affirming surgeries, and signed a form indicating he did not consent to a further genital examination in part because of his post-traumatic stress disorder.  (*Id.* ¶¶ 30-44, 53-55.)  Although DOCCS policy and federal law prohibits conducting genital examinations for the purpose of determining genital status, Defendants—all DOCCS employees acting under color of state law—forced him to submit to the assault by placing him in medical lock, a form of solitary confinement.  28 C.F.R. § 115.15(e).  (Compl. ¶¶ 45-46, 56-58, 62-74.)

After eight days in medical lock, Mr. Smith was brought to Defendant Doctor Small, who also told him to submit to the examination so he could leave medical lock.  (Compl. ¶¶ 75-80.)  Mr. Smith explained that he had PTSD and had previously not consented to the evaluation.  (*Id.* ¶ 77.)  He also explained that the examination would violate the Prison Rape Elimination Act ("PREA") by requiring him to undergo a genital examination for the purpose of determining his genital status.  (*Id.* ¶ 78.)  Doctor Small stated that there were no repercussions for not following PREA and that he should just submit if he wanted to get out of medical lock.  (*Id.* ¶¶ 79-80.)  Given the emotional and physical trauma Mr. Smith endured during his time in medical lock and his concerns about its impact on the length of his sentence, Mr. Smith ultimately agreed to a visual examination of his

genitals. (*Id.* ¶ 85.) Despite this explicit limitation, Doctor Small penetrated him with a gynecological tool at which point he jumped off the exam table and ended the examination. (*Id.* ¶¶ 86-90.) After the assault, Mr. Smith was allowed to leave medical lock. (*Id.* ¶¶ 94-95.)

DOCCS's treatment of Mr. Smith violates the Fourth Amendment, the Eighth Amendment, and the Fourteenth Amendment of the United States Constitution. As a result of this experience and resulting severe emotional distress, Mr. Smith's PTSD was triggered and he has experienced exacerbated gender dysphoria. (*Id.* ¶ 96.) Mr. Smith has developed difficulty sleeping and eating due to the treatment he suffered by DOCCS. (*Id.*) Mr. Smith now isolates himself from friends and family due to, among other problems, anxiety, a distorted body image, and an aversion to physical touch which hinder his ability to develop intimate relationships. (*Id.*) Mr. Smith also avoids being in public as he experiences hypervigilance for transphobia, feels unsafe, and is in constant fear of discrimination and for his safety, which has prevented him from securing employment and seeking medical attention. (*Id.*)

### III.   ARGUMENT

Although a complaint must usually state the names of all parties, Fed. R. Civ. P. 10(a), courts have discretion to allow a plaintiff to proceed anonymously where the plaintiff's need for privacy outweighs the public's interest in knowing their identity and any prejudice to the defendant. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). The Second Circuit has articulated a list of factors relevant to this analysis:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of [her] age; (5) whether the suit is challenging the actions of the government or that

of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff
to press [her] claims anonymously, whether the nature of that prejudice (if any)
differs at any particular stage of the litigation, and whether any prejudice can be
mitigated by the district court; (7) whether the plaintiff's identity has thus far been
kept confidential; (8) whether the public's interest in the litigation is furthered by
requiring the plaintiff to disclose [her] identity; (9) whether, because of the purely
legal nature of the issues presented or otherwise, there is an atypically weak public
interest in knowing the litigants' identities; and (10) whether there are any
alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id*. at 190 (internal citations omitted).  Each of the *Sealed Plaintiff* factors relevant to this case—

the first, second, fifth, sixth, seventh, eighth, and tenth—weigh in favor of granting Plaintiff's

motion to proceed anonymously.

**A.  This Case, Which Involves an Invasive and Traumatic Assault on Mr. Smith Because
He is Transgender, Reveals Sensitive and Highly Personal Information that Poses a
Serious Risk of Physical and Mental Harm to Mr. Smith if Disclosed (*Sealed Plaintiff*
Factors One and Two)**

This Court should find that Plaintiff has a compelling interest in keeping his transgender

status and information about his genitalia and gender-affirming surgeries private.  As recognized by

the Second Circuit, "the excruciatingly private and intimate nature of transsexualism, for persons

who wish privacy in the matter, is really beyond debate."  *Powell v. Shriver*, 175 F.3d 107, 111 (2d

Cir. 1999) (recognizing a constitutional right to privacy in one's transgender identity); *Doe v. United

States Life Ins. Co.*, 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (recognizing that being transgender is

one of the special circumstances where courts have allowed parties to use pseudonyms because it is

"a very private matter"); *Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327, 333 (D.P.R.

2018) ("'[T]here are few areas which more closely intimate facts of a personal nature' than one's

transgender status.") (internal citations omitted).

This privacy interest is particularly compelling in this case, which involves detailed

information about Mr. Smith's genitalia and gender-affirming genital surgeries, sexual abuse he

suffered as a child, and the invasive penetration of his body without his consent.  *See James v.*

4

*Jacobson*, 6 F.3d 233 (4th Cir. 1993) (holding that the district court erred by denying family's motion to proceed anonymously where fertility doctor was alleged to have non-consensually inseminated a patient with his own sperm); *Doe v. Paychex, Inc.*, 2020 WL 219377, at *9 (D. Conn. Jan. 15, 2020) ("Courts have permitted cases to proceed anonymously where they involve claims relating to sexual misconduct . . . ; highly personal medical decisions and procedures, such as abortion . . . ; or minors . . . .") (internal citations omitted); *Rapp v. Fowler*, 537 F. Supp. 3d 521, 528 (S.D.N.Y. 2021) ("Allegations of sexual assault are 'paradigmatic example[s]' of highly sensitive and personal claims and thus favor a plaintiff's use of a pseudonym.  Likewise, allegations of sexual abuse of minors typically weigh significantly in favor of a plaintiff's interest.") (alterations in original); *Doe v. De Amigos, LLC*, 2012 WL 13047579, at *2 (D.D.C. Apr. 30, 2012) (granting motion to proceed by pseudonym where case involved "details of the sexual assault, plaintiff's genital anatomy, hospital examinations, [and] testing"); *Doe v. Corrections Corp. of Am.*, Case No. 3:15-cv-00068 (Docket Entry No. 11) (M.D. Tenn. Jan. 22, 2015) (granting motion to proceed by pseudonym where the plaintiff, a victim of child sexual abuse, alleges she was required to display her vulva to correctional officers during prison visit).  As in these cases, if Mr. Smith is not permitted to proceed anonymously, he faces the possibility of press reports about this case that include his name and personal details about his genitalia and his affirming surgeries, and he may be forced to relive the graphic details of his assault, not only in the context of this litigation, but also every time someone searches his name on the internet.  *See, e.g.*, *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 196-97 (E.D.N.Y. 2006) (granting plaintiff's request to proceed anonymously where there was evidence that emotional or psychological harm would result from disclosure of plaintiff's identity); *Doe v. Cabrera*, 307 F.R.D. 1, 7 (D.D.C. 2014) ("Having the plaintiff's name in the public domain, especially in the Internet age, could subject the plaintiff to future unnecessary interrogation, criticism, or psychological trauma, as a result of bringing this case.").

Mr. Smith also has a compelling interest in keeping his identity private because people publicly identified as transgender in any context are at significant risk of being subjected to hostility, including fatal violence. *See* Human Rights Campaign, *Dismantling a Culture of Violence: Understanding Violence Against Transgender and Non-Binary People and Ending the Crisis* (updated Oct. 2021) (noting there are at least 256 cases of fatal violence against transgender and gender non-conforming people since 2013); Sandy James, et. al., *The Report of the 2015 U.S. Transgender Survey*, 198 (National Center for Transgender Equality 2016) (noting that nearly half of survey respondents reported being denied equal treatment, verbally harassed, and/or physically attacked because of being transgender); *see also* Emily Waters et al., *A Crisis of Hate: A Report on Lesbian, Gay, Bisexual, Transgender, and Queer Hate Violence Homicides in 2017* (Nat'l Coalition of Anti-Violence Programs 2018) (noting an 86% increase in homicides of LGBTQ people since 2016).

Numerous courts have explicitly recognized the disturbing and ongoing hostility and violence directed at transgender people because of their identities. *See, e.g.*, *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017) ("There is no denying that transgender individuals face discrimination, harassment, and violence because of their gender identity."); *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 611 (4th Cir. 2020) ("There is no doubt that transgender individuals historically have been subjected to discrimination on the basis of their gender identity, including high rates of violence and discrimination.") (quoting *Grimm v. Gloucester Cnty. Sch. Bd.*, 302 F. Supp. 3d 730, 749 (E.D. Va. 2018)); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015) ("[T]ransgender people have suffered a history of persecution and discrimination."); *In re E.P.L.*, 891 N.Y.S.2d 619, 621 (N.Y. Sup. Ct. 2009) (finding a transgender person has a right to feel threatened for his personal safety in light of the numerous documented instances of people being targeted based on their gender identity).

For all of the above reasons, courts routinely permit transgender litigants to proceed anonymously. *See, e.g.*, *Doe v. McConn*, 489 F. Supp. 76 (S.D. Tex. 1980); *Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992); *Doe v. Blue Cross & Blue Shield*, 794 F. Supp. 72 (D.R.I. 1992); *K.L. v. State, Dep't of Admin., Div. of Motor Vehicles*, 2012 WL 2685183 (Alaska Mar. 12, 2012); *Doe v. Pence*, 2016 WL 11578507 (S.D. Ind. Nov. 22, 2016); *Karnofski v. Trump*, 2017 WL 11431253 (W.D. Wash. Oct. 10, 2017); *Doe v. City of Detroit*, 2018 WL 3434345 (E.D. Mich. July 17, 2018); *Foster v. Anderson*, 2019 WL 329548 (D. Kans. Jan. 25, 2019); *Doe v. Pa. Dep't of Corr.*, 2019 WL 5683437 (M.D. Pa. Nov. 1, 2019); *Doe v. Triangle Doughnuts, LLC*, 2020 WL 3425150 (E.D. Pa. June 23, 2020); *Doe v. Genesis Healthcare*, 535 F. Supp. 3d 335 (E.D. Pa. Apr. 23, 2021); *Del. Valley Aesthetics, PLLC v. Doe 1*, 2021 WL 2681286 (E.D. Pa. June 30, 2021); *Doe v. Pa. Dep't of Corr.*, 2022 WL 446370 (W.D. Pa. Feb. 14, 2022); *Hersom v. Crouch*, 2022 WL 908503 (S.D. W.V. Mar. 28, 2022).

In light of the discrimination, harassment, and violence experienced by transgender people, Mr. Smith legitimately fears that if his identity is publicly disclosed, he will face discrimination, harassment, and violence because he is transgender. *See* Declaration of John Smith in Support of Motion to Proceed Anonymously, dated June 17, 2022 ("Decl."). Mr. Smith does not often disclose that he is transgender because of these fears. (Decl. ¶¶ 6-16.) He is legitimately afraid that he will not be able to find or maintain stable employment because of the extraordinary discrimination and hostility transgender people face in the workplace. (Decl. ¶¶ 14, 16); 2015 U.S. Transgender Survey at 148 (30% of respondents reporting being fired, attacked or harassed, or denied a promotion because they are transgender). He fears being subjected to police ridicule and harm based on past experiences where he has been targeted and harassed by officers during police stops because he is transgender. (Decl. ¶¶ 10-12); *see Doe v. Pence*, 2016 WL 11578507, *1 (S.D. Ind. Nov. 22, 2016) (finding that transgender plaintiff demonstrated he is vulnerable to retaliation because he was

previously ridiculed and detained by police officers and because his colleagues did not know he was transgender); *Doe v. Smith*, 105 F. Supp. 2d 40, 45 (E.D.N.Y. 1999) (courts allow "plaintiffs to proceed anonymously where disclosure of their identities created a risk of harm from third parties unaffiliated with the case.").

For all of the above reasons, Mr. Smith has compelling reasons to proceed anonymously that outweighs public interest in disclosure.

**B. Mr. Smith's Interest in Proceeding Anonymously is Particularly Strong Because He is Challenging a Government Activity of Interest to the Broader Community (*Sealed Plaintiff* Factor Five)**

This Court should grant Mr. Smith's motion to proceed anonymously because he is challenging the actions of government employees whose behavior impacts the larger transgender, gender non-conforming, non-binary, and intersex ("TGNCNBI") community. As recognized in the federal PREA standards, TGNCNBI people are particularly vulnerable to sexual abuse and harassment in carceral settings. *See* 28 C.F.R. § 115.41(d)(7) (requiring prisons and jails to consider whether a incarcerated person is transgender, intersex, or gender non-conforming to ensure safer placement and appropriate programming). Because of specific concerns about correctional authorities subjecting TGNCNBI people to unwarranted and invasive genital exams, the PREA standards prohibit examining a transgender or intersex inmate for the purpose of determining genital status. 28 C.F.R. § 115.15(e). Nevertheless, despite these explicit protections, Mr. Smith was subjected to precisely this type of invasive search. A plaintiff's interest in proceeding anonymously is stronger when they challenge "governmental activity," such as failure to implement federal regulations, as here, and there is a public interest in the vindication of their rights. *See E.W. v. New York Blood Center*, 213 F.R.D. 108, 111; *c.f. Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (granting motion to proceed anonymously where the defendants

played a significant role in the community and because the case "raise[d] concerns affecting a larger association rather than the interest of the individual plaintiff").

### C. Defendants Are Not Prejudiced By Allowing Mr. Smith to Proceed Anonymously (*Sealed Plaintiff* Factor Six)

The Court should also grant this motion because allowing Mr. Smith to proceed anonymously does not prejudice the Defendants.  Mr. Smith will disclose his name to the Defendants pursuant to an appropriate order, and Defendants will be able to fully conduct discovery.  *See Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 687 (11th Cir. 2001) (finding no prejudice where the plaintiff offered to disclose her name to defendants for discovery purposes in case involving abortion access).  As the court found in *Kolko*, "[o]ther than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by plaintiff's anonymity in court papers."  242 F.R.D. at 198; *see also E.W.*, 213 F.R.D. at 112 (holding that where defendant knew plaintiff's real identity, there was no "prejudice to its ability to conduct discovery or try the matter if plaintiff were to proceed under a pseudonym").  In short, permitting Mr. Smith to proceed under a pseudonym will not impact the Defendants' ability to defend against this case.

In reviewing this factor, courts also consider whether Defendants will suffer a reputational harm by permitting plaintiff to proceed anonymously.  While Defendants may experience some reputational harm as a result of this lawsuit, such harm is significantly outweighed in light of the *Sealed Plaintiff* factors one, two, five, seven, eight, and ten.  *See Doe v. Penzato*, 2011 WL 1833007, at *4 (N.D. Cal. May 13, 2011) (finding that "any prejudice Defendants would face does not favor requiring Plaintiff to disclose her identity" where "Defendants face public exposure regardless of whether Plaintiff's identity is made public, and the allegations against them would remain the same").

9

### D.  Mr. Smith's Identity Has Thus Far Been Kept Confidential (*Sealed Plaintiff*  Factor Seven)

Another factor in favor of permitting Mr. Smith to proceed anonymously is that his identity has thus far been kept confidential in relation to this litigation and, more broadly, Mr. Smith does not widely or publicly disclose his transgender status, for many of the reasons set forth in Section A above.  (Decl. ¶¶ 6-10, 13-16.)  Mr. Smith's circumstances are similar to the plaintiff in *Doe v. Genesis Healthcare*, who sought to proceed anonymously in a case challenging discrimination on the basis of her gender identity by her former employer.  535 F. Supp. 3d 335 (E.D. Pa. 2021). There, the court found that not only had she maintained her confidentiality since the commencement of the litigation, she had also only revealed the fact that she was transgender to her counsel, close friends, family, doctors, employers, and agencies to the extent required by law.  *Id.* at 340.  In other words, she wanted to be accepted as a woman in all aspects of her life, a goal that would be significantly hampered by public disclosure of her sex assigned at birth.  *See Triangle Doughnuts*, 2020 WL 3425150 (E.D. Pa. June 23, 2020) (same); *Doe v. Pa. Dep't of Corr.*, 2019 WL 5683437, at *3 (M.D. Pa. Nov. 1, 2019) (same).   Similarly, Mr. Smith seeks to be acknowledged and accepted as a man in his public life.  (Decl. ¶¶ 6-7.)  He has only voluntarily disclosed his transgender status to a limited set of people, including close family members, his attorneys, and medical providers.  (*Id.* ¶ 9.)

### E.  The Public Interest is Best Served by Permitting Plaintiff to Proceed Anonymously in this Case Concerning the Treatment of Incarcerated Transgender People (*Sealed Plaintiff* Factors Eight and Ten)

The public has a strong interest in the subject matter of Mr. Smith's complaint, but this is nevertheless a case in which the public interest weighs *in favor* of permitting him to proceed anonymously.  As courts have recognized in similar circumstances, protecting Mr. Smith's identity will not impede the public's ability to follow the proceedings, particularly where the public will

10

still have access to the filings, unlike a sealed case.  *See Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (recognizing that the public has an interest in civil rights lawsuit challenging sexual abuse by state troopers, but protecting plaintiff's identity will not impede the public's ability to follow the case); *Doe v. Pa. Dep't of Corr.*, 2019 WL 5683437, at *3 (M.D. Pa. Nov. 1, 2019) ("[U]nlike a sealed proceeding, the public will have access to everything else in the proceedings as they would in a typical case.").  Proceeding anonymously is the least detrimental to the public interest in following the case.  *See Sealed Plaintiff*, 537 F.3d 185, 190 (2d Cir. 2008) (holding the tenth factor is "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff").

It is also important that the courts not deter other litigants from bringing similar constitutional and civil rights claims because of fear of public disclosure.  *See Triangle Doughnuts LLC*, 2020 WL 3425150, at *6 (E.D. Pa. June 23, 2020) (noting public's interest in permitting cases to proceed anonymously when they address "important societal issues of equity and personal value" such as employment discrimination cases brought by transgender litigants); *Kolko*, 242 F.R.D. at 195 ("[T]he public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.").  This interest is particularly strong where, as here, a plaintiff's lawsuit involves the constitutional and civil rights of members of the TGNCNBI community to be free from sexual assaults and compelled genital examinations in interactions with government agencies.

## IV.    CONCLUSION

Mr. Smith's interest in maintaining privacy and avoiding harassment, other discrimination, and violence significantly outweigh any public interest in knowing his identity, and an order would not prejudice the Defendants' ability to defend themselves.  For these reasons, Plaintiff respectfully

moves this Court to grant this motion, permit him to proceed by the pseudonym "John Smith," and order the parties to enter into an order consistent with Plaintiff's interest in maintaining privacy and avoiding harassment, discrimination, and violence.

Dated: New York, New York
       August 29, 2022

PAUL HASTINGS LLP

By:   /s/ Daniel A. Fliman
      Daniel A. Fliman
      Emily L. Kuznick
      200 Park Avenue
      New York, NY 10166
      Telephone: (212) 318-6000
      danfliman@paulhastings.com
      emilykuznick@paulhastings.com

THE LEGAL AID SOCIETY

By:   /s/ Erin Harrist

      Erin Beth Harrist
      Dori Lewis
      Sophia Gebreselassie
      199 Water Street, 6th Floor
      New York, NY 10038
      Telephone: (212) 577-3300
      Eharrist@legal-aid.org
      Dlewis@legal-aid.org
      Sgebreselassie@legal-aid.org

*Attorneys for Plaintiff Mr. Smith*

12